IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRUSTEES OF THE NATIONAL | : | CIVIL ACTION |
| ELEVATOR INDUSTRY PENSION | : | |
| FUND, et al., | : | No. 19-4305 |
| | : | |
| v. | : | |
| | : | |
| MAPLE MANAGEMENT LLC d/b/a | : | |
| RAE LIFTS, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **December 15, 2020**

Plaintiffs, four multiemployer employee benefit funds and one labor-management fund (collectively, the Plaintiff Funds), bring this action against Defendants Maple Management LLC d/b/a Rae Lifts and James Mecha pursuant to the employee Retirement Income Security Act (ERISA). The Plaintiff Funds allege six counts which seek damages for the amounts owed under certain collective bargaining agreements with the International Union of Elevator Constructors (IUEC), a permanent injunction to prevent Defendants from failing to pay those amounts owed in the future, and breach of fiduciary duty against Mecha. The Plaintiff Funds move for summary judgment on each count. Defendants oppose summary judgment and argue the amounts owed must be offset because upon joining the IUEC, Defendants signed a "written waiver" which did not require them to make certain payments to one of the Plaintiff Funds. Defendants also move for partial summary judgment on the claim for a permanent injunction. Because there is no genuine dispute of material fact as to the amounts owed to the Plaintiff Funds, and because the "written waiver" is not enforceable against the Plaintiff Funds, the Court will grant the Plaintiff Funds' motion for summary judgment on their claims for unpaid contributions and breach of fiduciary duty against Mecha. The Court will, however, deny the Plaintiff Funds' motion and grant

Defendants' motion on the claim for a permanent injunction because the Plaintiff Funds have failed to show irreparable harm or the absence of an adequate remedy at law.

**BACKGROUND[1]**

The Plaintiff Funds include four benefit funds and one labor-management fund: the Trustees of the National Elevator Industry Pension Fund, National Elevator Industry Health Benefit Plan, National Elevator Industry Educational Plan, and Elevator Constructors Annuity and 401(k) Retirement Plan (collectively, the Benefit Funds), and the Elevator Industry Work Preservation Fund (the Labor-Management Fund). The Benefit Funds are organized as multiemployer employee benefit plans under ERISA. The Labor-Management Fund is labor-management cooperation committee as provided for in the Taft-Hartley Act and the Labor-Management Cooperation Act of 1978. *See* 29 U.S.C. § 186(c)(9); 29 U.S.C. § 175a. The Plaintiff Funds are all governed by their Restated Agreements and Statements of Trust. They are all financed by contributions paid by employers in the elevator industry pursuant to a collective bargaining agreement with the IUEC.

Defendant Rae Lifts is an Illinois limited liability company transacting business as a contractor or subcontractor in the elevator industry. Defendant James Mecha is the owner and president of Rae Lifts. On May 4, 2017, Mecha, on behalf of Rae Lifts, executed a "Short Form Agreement" with the IUEC. The Short Form Agreement bound Rae Lifts to the collective bargaining agreement with the IUEC. Pursuant to the Short Form Agreement Rae Lifts also agreed

---

[1] Unless otherwise noted, the following facts are undisputed.

to be bound to the Plaintiff Funds' Restated Agreements and Statements of Trust (collectively, the governing documents).[2]

The collective bargaining agreement requires employers to make contributions to the Plaintiff Funds for each hour of work an employee performs. The amount of these contributions is determined when employers send the Plaintiff Funds monthly contribution reports detailing the number of hours worked by each individual employee. The number of hours is multiplied by the contribution rate to determine the monthly contribution owed. The monthly contributions are due on the 15th day of the month following the reporting month. Rae Lifts, as an employer, was thus required to submit monthly contribution reports and pay the owed contributions.

When an employer-company's owner or officer performs work covered by the collective bargaining agreement, the employer must pay contributions for a minimum of 165 hours per month to the Health Benefit Plan and a minimum of 160 hours to the remaining Benefit Funds and Labor-Management Fund. Therefore, because Mecha is the owner and president of Rae Lifts, Rae Lifts is required to report a minimum of 165 hours per month to the Health Benefit Plan and 160 hours per month to each of the other Plaintiff Funds.

Defendants stipulated the governing documents require an employer to make contributions for a minimum of 165 hours to the Health Benefit Plan on behalf of an officer, Mecha is an officer of Rae Lifts, and Mecha performed work covered by the collective bargaining agreement. *See* Stip. ¶ 4–5. However, Defendants dispute whether the 165-hour requirement applies to them. According

---

[2] Defendants dispute this fact. They assert the Short Form Agreement does not set forth the entirety of the agreement. *See* Defs.' Statement of Facts ¶ 4. They contend a "written waiver," which waived the 165-hour rule to the Health Benefit Plan, is also included in the terms of the Short Form Agreement. *See id.* The Court will address Defendants' contention later in this Memorandum, but the Court notes Defendants do not dispute they were bound by the collective bargaining agreement and the Plaintiff Funds' Restated Agreements and Statements of Trust.

to Defendants, the 165-hour requirement was waived when Mecha signed the Short Form Agreement on behalf of Rae Lifts, with the IUEC. Defendants contend the 165-hour requirement was waived in a written agreement (the written waiver) in which Mecha and the IUEC representative allegedly executed contemporaneously with the Short Form Agreement.

The written waiver is a document titled "2017 Minimum Benefit Contributions for Company Owner participating in the NEI Benefit Plans." *See* Defs.' Ex. 6-B. The document explains the 165-hour requirement to the Health Benefit Plan for owners who perform work covered by the collective bargaining agreement. *See id.* It also has a chart which "shows the Hourly Benefit Contribution Rate for the . . . limited liability company owner's Health Benefit Plan." *Id.* Mecha crossed out this chart and above it, wrote "Waved [sic] per Joe Dupont." *Id.* The statement is initialed by a Rae Lifts employee, Ken Nogar, who contends he witnessed the execution of the Short Form Agreement and written waiver. *See* Defs.' Ex. 7, ¶ 2.

Below the Health Benefit Contribution Rate chart is a paragraph explaining the 160-hour requirement for the remaining Plaintiff Funds for owners who perform work covered by the collective bargaining agreement. A second chart shows the Hourly Benefit Contribution Rate for an owner to make contributions to the other Plaintiff Funds. The second chart is unaltered.

At the bottom of the document, there are three additional charts. The first provides "The Minimum Monthly contribution to the NEI Health Benefit Plan" and multiplies the contribution rate by the 165-hour requirement to arrive at a monthly contribution of $2,520.375. Mecha crossed out this chart. The second chart provides "The Minimum Contributions to all Other NEI Benefit Plans" and multiplies the contribution rate by the 160-hour requirement to arrive at a monthly contribution of $2,657.600. Mecha circled this table and wrote next to it "Monthly." The final chart provides "The Total Minimum Monthly . . . limited liability company owner contribution to

all NEI Benefit Plans." The first row in the chart states the monthly contribution to the Health Benefit Plan, the second row states the monthly contribution to the other Plaintiff Funds, and the final row states the total monthly contribution as $5,177.975. Next to the second row, Mecha wrote, "OK."

According to Mecha, while discussing Rae Lifts joining the IUEC, he informed the IUEC representatives that a company of his size could not pay the contributions required. Mecha contends Joe DuPont, an IUEC representative, told him "the hours were ok'd." Defs.' Ex. 6-B, ¶ 3; *see also* Ex. 6-A (message from DuPont). At the May 4, 2017, meeting to sign the Short Form Agreement, an IUEC representative handed Mecha the 2017 Minimum Benefit Contributions document. After reading this document, Mecha contends he clarified that "a significant part" of the minimum contributions were waived and crossed out those parts he believed were waived. The IUEC representative "confirmed" this understanding. *See id.* ¶ 4. Although Mecha does not state this was a verbal confirmation, there is no evidence the IUEC representative provided a written confirmation of that understanding.

After executing the Short Form Agreement, Rae Lifts was required to, and did, begin submitting its contribution reports and paying contributions in April 2018. Its obligation to pay monthly contributions pursuant to the Short Form Agreement continues to date.

Pursuant to the governing documents, the Plaintiff Funds were permitted to conduct a payroll audit of any employer to ensure the employer made proper contributions. Although the Plaintiff Funds attempted to conduct a payroll audit of Rae Lifts, Defendants refused to cooperate with the proposed audit. As a result, the Plaintiff Funds initiated this case to compel the payroll audit and collect any unpaid contributions revealed therefrom. *See* Compl., Sept. 18, 2019, ECF No. 1. The Plaintiff Funds also asserted a claim for breach of fiduciary duty against Mecha.

After initiating this case, the Plaintiff Funds filed another complaint against Defendants seeking unpaid contributions and injunctive relief to prevent Rae Lifts from failing to make contributions in the future. Defendants moved to consolidate the two cases, and the Court granted the motion. The Plaintiff Funds subsequently filed an Amended Complaint alleging six counts: (I) to compel a payroll audit and unpaid contributions discovered by the payroll audit; (II) unpaid contributions owed to the Benefit Funds from November 2019 through the present; (III) unpaid contributions owed to the Health Benefit Plan from deductions of employees' wages from November 2019 through the present; (IV) unpaid contributions owed to the Labor-Management Fund from November 2019 through the present; (V) request for a permanent injunction; and (VI) breach of fiduciary duty against Mecha. *See* Am. Compl., Jan. 28, 2020, ECF No. 14.

During the course of discovery, the Plaintiff Funds completed a payroll audit on June 4, 2020, using a third-party accountant, Daniel A. Winters & Co. The payroll audit revealed Defendants owed $135,019.38 in unpaid contributions, and $7,728.40 in interest to the Plaintiff Funds for the period of April 2018 through January 2020. Defendants dispute the amount owed to the Plaintiff Funds and the accounting methods employed in the payroll audit report.

On behalf of Mecha, the payroll audit found Rae Lifts owed $64,320.78 in unpaid contributions to the Plaintiff Funds. To the Health Benefit Plan, the payroll audit determined Rae Lifts had not contributed the minimum 165-hours for any month. The unpaid contributions to the Health Benefit Plan totaled $30,588.32. To the other four other Plaintiff Funds, the payroll audit determined Rae Lifts had not contributed the minimum 160 hours for any month either. The unpaid contributions owed to the other Plaintiff Funds totaled $33,732.46. Although Defendants dispute whether the 165-hour requirement applies to them, Defendants nonetheless concede they were required to report 160 hours to the other Plaintiff Funds. *See* Defs.' Resp. in Opp. to Mot. for

Summ. J. 16 ("Defendants do not have a good faith basis to dispute the foregoing liability and damages [regarding contributions owed to the other Funds on behalf of Mecha]."). Defendants also do not appear to challenge the amount of contributions they actually made to the Plaintiff Funds.

On behalf of two other Rae Lifts employees, Charles Adams and Dwayne Lester, the payroll audit determined Rae Lifts underreported hours and owed unpaid contributions. The auditor compared Adams and Lester's timesheets with the contribution reports submitted to the Plaintiff Funds. After making a comparison, the auditor determined Rae Lifts underreported 49.5 hours on behalf of Adams and Lester. The unpaid contributions for these hours total $1,636.60.[3]

On behalf of one Rae Lifts employee, Kenneth Campbell, the payroll audit determined Rae Lifts owed unpaid contributions. In making this determination, the auditor conducted a "reasonableness" test which looks to an employee's annual compensation and hourly rate of pay. The auditor calculated the employee's estimated compensation by multiplying the reported hours by the "weighted average hourly pay rate" including any pay rate changes. This estimated compensation was then compared to the employee's compensation listed on his IRS Form W-2. This comparison resulted in a significant difference for Campbell.

Upon finding the difference, the auditor divided the employee's compensation as listed on his W-2 with his weighted average hourly pay rate to reach the amount of hours the employee

---

[3] Defendants dispute this amount because they contend the auditor used a "weighted average" computation in arriving at this amount. However, the record shows the weighted average computation was not used in reaching this amount. *See* Audit Finding No. 2, Pls.' App. 140, 144, June 12, 2020, ECF No. 27-4 (stating procedure used was a comparison of payroll records to contribution reports and finding unpaid contributions of $1,636.60); Winters Decl. ¶ 15, Pls.' App. 68, July 2, 2020, ECF No. 32-1 ("The weighted average hourly rate was not considered, calculated, nor applied, to Procedure and Finding No. 2."). The Court thus finds this amount undisputed.

actually worked. Then, comparing the hours from this procedure to the hours reported to the Plaintiff Funds, the auditor determined Rae Lifts underreported 2,044 hours in 2018 and 2019 on behalf of Campbell. The unpaid contributions for these hours total $69,062.00.[4]

In addition to the unpaid contributions revealed by the payroll audit, the Plaintiff Funds contend Defendants underreported hours for the months of February, March, and April 2020. The contribution reports for these months show Rae Lifts reported 80, 11, and 0 hours on Mecha's behalf. Rae Lifts thus underreported Mecha's hours, because Mecha is subject to the 160- and 165-hour requirement. Due to these underreported hours, Defendants owe an additional $16,168.51 in unpaid contributions to the Benefit Funds and $226.13 to the Labor-Management Fund for the period of February 2020 through April 2020.

If an employer fails to pay contributions, the Plaintiff Funds are entitled to interest on those contributions. In the Plaintiff Funds' governing documents, the interest rate is listed as the rate charged by the Internal Revenue Service at the time of delinquency. *See, e.g.*, Decl. of Robert Betts Ex. 3, App. 40. At the time of the alleged delinquency in this case, that interest rate was 5%. *See*

---

[4] Defendants dispute this amount because they contend the auditor's use of the "weighted average" computation is unsupported by the actual hourly rate Campbell was paid. Defendants' concern on this issue appears to be based on their belief that other employees' hourly pay was used in computing the weighted average pay for Campbell. However, the auditor has clarified that the weighted average pay for Campbell was determined using only the pay rates listed for him and not any other employees. *See* Pls.' Reply, App. 70, Decl. of Daniel A. Winters ¶ 18.

Also, based on the actual pay rates Defendants provided, the Court finds no error in calculating the weighted average hourly pay rate for Campbell based on his actual pay rate. In 2018, Campbell's actual hourly pay was $29.25 until June 12, 2018; $34.25 until September 13, 2018; and $38.40 through the end of 2018. Those pay rates average $32.64 ($29.12 x 6.5 months, plus $34.25 x 3 months, plus $38.40 x 2.5 months = $308.03; divided by 12 months, approximately). This average hourly pay was used by the auditor. Nevertheless, because Defendants' dispute regarding the weighted average hourly pay was premised on a mistaken belief that *other* employees' hourly pay was used, and only Campbell's actual hourly pay was used, it appears Defendants have no basis to dispute the weighted average hourly pay used for Campbell in Finding No. 5.

26 U.S.C. § 6621(c) (stating IRS rate is federal short-term rate plus 3%); Rev. Rul. 2020-3, 2020-7 IRB 409 (2020) (stating federal short-term rate is 1.58% rounded to the nearest full percent—2%). Therefore, the amount of any unpaid contributions is subject to a 5% interest rate.

The governing documents also provide for a payment of liquidated damages for any late or unpaid contributions. Pursuant to the Short Form Agreement, which incorporates the governing documents, liquidated damages are assessed at a rate of 20%. *See* Pls.' App. 41, 52, 61, 64, 72, 100.

Based on the findings in the payroll audit, the Plaintiff Funds moved for summary judgment seeking a damages award for the amounts of unpaid contributions listed in the audit, a permanent injunction, and joint and several liability against Mecha for breach of fiduciary duty. Defendants oppose the motion, arguing they are entitled to a setoff of damages because they overpaid some contributions, the written waiver did not require them to make contributions for 165-hours on Mecha's behalf to the Health Benefit Plan, and because the auditor's calculations on the other employees do not provide an accurate basis for damages. Defendants also cross-moved for partial summary judgment on the Plaintiff Funds' claim for a permanent injunction.

Related to the summary judgment motions, Defendants moved for leave to file an amended answer to assert defenses for fraud-in-the-execution and fraud-in-the inducement. They also seek leave to assert a counterclaim for contract reformation and assert the written waiver is an integrated part of the Short Form Agreement. Defendants contend the written waiver, which gave rise to the new defenses and counterclaim, precludes summary judgment in the Plaintiff Funds' favor. The Plaintiff Funds oppose the motion and argue the defenses are meritless. The Court held a telephonic oral argument on the motions on July 7, 2020.

**DISCUSSION**

The Court will grant the Plaintiff Funds' motion for summary judgment on Counts I, II, III, and IV because there is no dispute of material fact as to the amount of unpaid contributions owed and the written waiver is unenforceable against the Plaintiff Funds. The Court will also grant summary judgment on Count VI for breach of fiduciary duty against Mecha because Defendants stipulated he is an ERISA fiduciary and is jointly and severally liable to the Plaintiff Funds for any unpaid contributions. On the Plaintiff Funds' claim for a permanent injunction, the Court will deny the motion for summary judgment and grant Defendants' cross-motion for partial summary judgment because the Plaintiff Funds have not shown irreparable harm or an inadequate remedy at law.

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment if "there is no genuine issue as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, a court must "view all facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). If, viewing the facts in this light, a reasonable jury could find for the nonmovant, then summary judgment must be denied. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 317 (3d Cir. 2014). A court must thus look to the elements of the underlying claim to determine whether factual disputes are material. *See Forrest*, 930 F.3d at 105.

Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a

10

judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (alteration omitted) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)).

I.   The Plaintiff Funds' Motion for Summary Judgment for Damages

Because there is no dispute that Defendants underreported employee hours and owe unpaid contributions to the Plaintiff Funds, the Court will grant the Plaintiff Funds' motion for summary judgment. ERISA provides that an employer obligated to make contributions to a multiemployer plan under the terms of a collective bargaining agreement must make those contributions pursuant to the terms and conditions of the agreement. *See* 29 U.S.C. § 1145. A plan fiduciary is permitted to sue an employer who fails to make such required contributions. *See id.* § 1132(a). If judgment is entered in favor of the plan, a court must award the plan (1) unpaid contributions, (2) interest on the unpaid contributions, (3) an amount equal to the greater of either interest on the unpaid contributions or liquidated damages not in excess of 20%, (4) reasonable attorney's fees and costs, and (5) any other legal or equitable relief the court deems appropriate. *See id.* § 1132(g)(2).

Starting with unpaid contributions, Rae Lifts owes $151,479.31 to the Plaintiff Funds. In Counts I, II, III, and IV, the Plaintiff Funds sought to compel a payroll audit, receive the unpaid contributions as determined by that payroll audit, and receive all other contributions owed as discovered in the course of this case. The third-party accountant conducted the payroll audit for the period of April 2018 through January 2020. Pursuant to the payroll audit, Rae Lifts owes $133,448.07 in unpaid contributions to the Benefit Funds and $1,571.31 in unpaid contributions to the Labor-Management Fund. *See* Pls.' App. 135–54. This amount consists of $64,320.78 owed on behalf of Mecha, $1,636.60 owed on behalf of Adams and Lester, and $69,062.00 owed on

behalf of Campbell. For February, March, and April 2020, Rae Lifts, on behalf of Mecha, did not

report the minimum 165 hours to the Health Benefit Plan or the minimum 160 hours to the other

Plaintiff Funds. As a result, Defendants also owe $16,168.51 to the Benefit Funds and $226.13 to

the Labor-Management Fund for those underreported hours.

Accordingly, for unpaid contributions owed on Counts I, II, III, and IV, the undisputed

facts show the Plaintiff Funds are entitled to judgment in the amount of $151,479.31. Although

Defendants challenge whether they were subject to the Health Benefit Plan's 165-hour requirement

on behalf of Mecha, Defendants have provided no other meritorious defense or factual dispute

related to the hours they reported, the payroll audit's determination of underreported hours for

each employee, or the amount owed for each underreported hour. As a result, the undisputed facts

show the Plaintiff Funds are entitled to judgment for those unpaid contributions. *See Kelly v. Gas

Gields Specialists, Inc.*, No. 14-4, 2015 WL 4926576, at *5 (M.D. Pa. Aug. 18, 2015) (granting

summary judgment for plaintiff on unpaid contributions claim because employer had no defense

to its unambiguous obligations as stated in collective bargaining agreements).

Despite Defendants' argument to the contrary, the written waiver is not a valid defense as

to the contributions owed on behalf of Mecha and they were required to report a minimum of 165

hours to the Health Benefit Plan on his behalf. First, according to the parties' stipulation and the

Employer Guidelines, Rae Lifts was required to report a minimum of 165 hours to the Health

Benefit Plan each month for Mecha (regardless of whether he worked the hours). *See* Stip. ¶ 4.

According to the payroll audit as to Mecha's reported hours (which Defendants do not dispute),

Rae Lifts underreported his hours.

Defendants nevertheless have produced "new evidence" of a written waiver of the 165-

hour requirement. If this waiver is enforceable, they assert it is a complete defense to any unpaid

12

contributions to the Health Benefit Plan as attributed to Mecha. Even accepting Defendants' evidence as true, the written waiver is unenforceable against the Plaintiff Funds and the defenses are thus meritless.

As an initial matter, it is important to recognize that the Plaintiff Funds are third-party beneficiaries to the Short Form Agreement and the collective bargaining agreement. Although third-party beneficiaries are usually subject to the same defenses as the original promisee, the Third Circuit has stated "collective bargaining agreements . . . are not typical third-party beneficiary contracts." *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992). Therefore, employers are precluded from asserting many contract defenses to avoid the obligation to pay contributions to benefit funds as third-party beneficiaries. *See id.* The Third Circuit also stated the only recognized defenses available to an employer against benefit funds are (1) the contributions are illegal, (2) the collective bargaining agreement is void, such as through fraud in the execution, and (3) the employees have voted to decertify the union and effectively voided the collective bargaining agreement. *See id.* Outside of these three defenses, it is unlikely an employer can avoid its obligation to pay contributions to benefit funds as stated in the collective bargaining agreement. *See id.* (rejecting defenses including lack of majority support for the union, oral promises to disregard the text of the agreement, and fraud in the inducement).

Because Rae Lifts challenges its clearly stated obligation to the 165-hour rule in the collective bargaining agreement, any defense must fall within the three defenses recognized. Rae Lifts appears to contend that the written waiver is a form of "fraud in the execution." If it is, they contend the agreement can be reformed to waive the 165-hour requirement.

"To prevail on a defense of fraud in the execution, a party must show 'excusable ignorance of the contents of the writing signed.'" *Id.* at 1505–06 (citing *Southwest Administrators, Inc. v.*

*Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986)). This would require a party to show he "signed an instrument that is radically different from that which [he] is led to believe that he is signing." *Id.* (internal citations omitted). Rae Lifts makes no such showing.

Based on Mecha's affidavit, he knew he was signing the Short Form Agreement to join the IUEC and pay contributions to the Plaintiff Funds. He merely believed he did not have to pay as much in contributions to the Health Benefit Plan as he actually was required to do under the terms. The fact that he may have thought that he would have to pay less to the Plaintiff Funds is not "radically different" from the agreement he actually signed. The written waiver, if used to show fraud-in-the-execution, does not provide a defense to the 165-hour requirement in the Short Form Agreement and Plan documents. *See Agathos*, 977 F.2d at 1506 (denying claim for fraud-in-the-execution because defendant did not argue that it thought the collective bargaining agreement it signed was a completely different document).

If the written waiver is used as a fraud-in-the-inducement defense, then Defendants are barred from making such a claim to avoid paying contributions. *See Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993) (stating multiemployer funds are immune from many contract defenses that would bar unions from enforcing a collective bargaining agreement, including fraud-in-the-inducement). The Plaintiff Funds were permitted to rely on the unambiguous written agreements to collect contributions from employers, including Rae Lifts. *See id.* The waiver, if premised on fraud-in-the-inducement, does not shield Defendants from being subject to the 165-hour requirement in the governing documents.

Placing these two defenses aside, Defendants also assert the waiver memorialized the intent of the parties entering the Short Form Agreement and was meant to be integrated into the entire

agreement. Alternatively, they argue the Short Form Agreement should be reformed to waive the 165-hour requirement. These arguments fail for similar reasons.

There is no evidence the waiver was integrated or incorporated into the Short Form Agreement (or any other binding documents). To comport with the statute of frauds, a written agreement may consist of multiple writings if (1) each writing is signed by the party to be charged and the writings relate to the same transaction, or (2) one writing is signed by the party to be charged and the unsigned writing is physically attached to the signed writing by the party to be charged, the signed writing refers to the unsigned writing, or it appears from all the writings that the signed writing was signed with reference to the unsigned writing. *See* Restatement (First) of Contracts § 208 (Am. Law Inst. 2020). The waiver is a document titled "2017 Minimum Benefit Contributions for Company Owner participating in the NEI Benefit Plans." The document summarizes terms of the Plans which require a minimum monthly contribution on behalf of owners who engage in covered work. It also has charts showing the minimum hours and total amount of contributions required. The document itself does not place any obligations on either party but merely summarizes obligations in the Short Form Agreement and governing documents. In this case, the waiver is not signed by an IUEC representative (let alone Mecha). Even without a signature, the signed Short Form Agreement is not physically attached to the waiver, does not refer to the waiver, and does not appear to have been signed in reference to the waiver.

As for the counterclaim for reformation,[5] there is no valid defense or basis to reform the Short Form Agreement to waive the 165-hour requirement. The only defenses that can be used to reform a contract are unavailable against the Plaintiff Funds. *See Agathos*, 977 F.3d at 1505.

---

[5] Defendants filed a motion for leave to file an amended answer to assert this counterclaim.

Further, to the extent Defendants argue the Plaintiff Funds committed fraud, there is no evidence that the Plaintiff Funds or the IUEC knew of Defendants' mistaken understanding of the terms of the Short Form Agreement to warrant reformation. *See* Defs.' Resp. to Pls.' Mot. for Summ. J. 7, June 25, 2020, ECF No. 29 ("Reformation of an ERISA plan may be appropriate where there is a unilateral mistake on the part of [a party] coupled with fraud or its terms violate ERISA." (citing *In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, No. 03-3924, 2006 WL 2822261, at *64 (E.D. Pa. Sept. 29, 2006)). Defendants have produced affidavits from Mecha and another employee stating they believed the *written waiver*, not the Short Form Agreement, waived the minimum 165-hour requirement for Mecha's contributions into the Health Benefit Plan. But, again, there is no evidence suggesting that document was part of the Short Form Agreement.[6]

At best, Defendants have produced evidence showing the IUEC representative made an oral promise to ignore the text of the Short Form Agreement and the governing documents. However, the Third Circuit has held an oral misrepresentation by a union representative is no defense to duties owed to benefit funds seeking unpaid contributions. *See Agathos*, 977 F.2d at

---

[6] Although neither party raised this issue, the Court also notes that because the Plaintiff Funds are third-party beneficiaries, Defendants' promise to make contributions for a minimum of 165 hours on Mecha's behalf cannot be avoided merely because of their erroneous belief as to the existence or extent of their duty to the Plaintiff Funds. *See* Restatement (First) of Contracts § 144 ("[W]here performance of a promise in a contract will benefit a person other than the promisee, the promisor's duty is not avoided or limited by an erroneous belief of the promisor or of the promisee as to the existence or extent of a duty of the promisee to the beneficiary."). Also, the doctrine of reformation due to unilateral mistake or fraud usually requires the party seeking reformation to show the *party against whom reformation is sought* actually knew of the mistake. *See Amerisourcebergen Drug Corp. v. Kohll's Pharmacy & Homecare, Inc.*, No. 09-1166, 2012 WL 5287887, at *3 (E.D. Pa. Oct. 26, 2012) ("A party seeking to reform a contract due to a unilateral mistake must show, by clear and convincing evidence, that the party against whom reformation is sought had such knowledge of the mistake as to justify an inference of fraud or bad faith." (internal quotation marks and citations omitted)). Defendants have only alleged that an IUEC representative knew of the mistake, not the Plaintiff Funds. Defendants thus cannot seek reformation against the Plaintiff Funds who were not present at the execution of the Short Form Agreement.

1505 (stating "oral promises to disregard the text of the agreement" is not a valid defense against benefit funds). Although Defendants contend the promise was memorialized in the written waiver, there is no evidence (including Defendants' own affidavits) showing an IUEC representative memorialized the written waiver of the 165-hour requirement. Defendants' affidavits state merely that *Mecha* marked up the document and another employee signed it. There is no evidence that an IUEC representative knew about the marked-up document, signed it, agreed to it, or understood it as Defendants' understanding of the Short Form Agreement. Therefore, it appears Defendants' entire defense is based on an IUEC representative's oral representation to waive the 165-hour requirement. Because an oral representation to ignore the text of the Short Form Agreement cannot be used against the Plaintiff Funds, Defendants have no defense to the 165-hour requirement.

Defendants' next argument, that summary judgment is inappropriate because the payroll audit also revealed that they overpaid contributions and the overpayment must be used to offset the judgment amount, is also without merit. Where an employer mistakenly makes contributions to benefit funds, ERISA does not require the funds to refund the contributions. *See Plucinski v. I.A.M. Nat. Pension Fund*, 875 F.2d 1052, 1054–55 (3d Cir. 1989). Although there is an equitable remedy for the return of mistakenly paid contributions, such a remedy is only available within ERISA's statutory scheme. *See Luby v. Teamsters, Health, Welfare, and Pension Tr. Funds*, 944 F.2d 1176, 1186 (3d Cir. 1991). Pursuant to 29 U.S.C. § 1103(c)(1), (2)(A)(ii), benefit funds are permitted to refund mistaken contributions if the employer establishes a right to the refund, it is determined that the contributions were made in error, and the employer files a claim with the administrator of the fund within six months of such determination. *See Mazza v. Sheet Metal Workers' Nat. Pension Fund*, 410 F. App'x 464, 468 (3d Cir. 2010).

Defendants have made no showing that they requested a right to refund with the Plaintiff Funds within six months of the overpaid contributions.[7] According to the payroll audit, Defendants overpaid $206.50 on behalf of employee Dwayne Lester for the months of October and December 2018. *See* Pls.' App. 145. Although Defendants overpaid contributions, they have not shown that they filed a claim with the administrator of the Plaintiff Funds and requested a refund within six months of the Plaintiff Funds finding they were made in error. They are thus not entitled to offset the unpaid contributions with their overpaid contributions.[8] *See Mazza*, 410 F. App'x at 469 (denying employer restitution and refund because it failed to file a refund claim within six months of a determination that contributions were made in error).

The Court having determined the Plaintiff Funds are entitled to a judgment award of $151,479.31, the Court will also award the Plaintiff Funds interest, liquidated damages, audit fees and costs, and attorney's fees on this amount. Pursuant to 29 U.S.C § 1132(g)(2)(B)–(E), a

---

[7] Defendants cite to numerous cases to support their contention that they are entitled to an automatic setoff of the judgment award. However, none of the cases involve an employer's owed contributions to benefit funds. *See, e.g.*, *Martorana v. Bd. of Trs. of Steamfitters Local Union 420 Health, Welfare & Pension Fund*, 404 F.3d 797, 802 (3d Cir. 2005) ("We, therefore, concluded that in the context of a restoration of plan funds due to a fiduciary breach, ERISA permits attachment of or setoff against the pension benefits of a fiduciary/plan participant who has committed the breach."). Further, the applicable provisions and governing documents in this case explicitly state that employers are not entitled to automatic refunds for overpaid contributions. *See* Pls.' App. 103–04; Pls.' Second App. 163–64 (governing documents explaining procedure to request refund for erroneously paid contributions and noting the Plaintiff Funds have discretion to determine whether contributions will be refunded, credited, or offset).

[8] The auditor's *preliminary* audit revealed the Defendants overpaid contributions in an amount of $7,710.36. Defendants also argue this amount should also be used to offset the amount of the judgment in this motion. On this issue, the parties dispute whether the auditor's preliminary audit findings can be used to dispute the amounts owed because the document was produced in furtherance of settlement negotiations. *See* Fed. R. Evid. 408 (prohibiting the use of statements made by either party during settlement or compromise negotiations when used to dispute the amount of a disputed claim). Regardless of whether this evidence is admissible, Defendants are not entitled to a refund of this amount for the same reasons as the overpaid contributions found in the final payroll audit.

judgment in favor of a plan shall also include interest on unpaid contributions, liquidated damages, and reasonable attorney's fees. The Short Form Agreement and governing documents set the interest rate at 5%. Applying this rate, interest on the unpaid contributions owed to the Benefit Funds revealed in the payroll audit and February, March, and April 2020 reporting months is $7,931.77. Interest on the unpaid contributions owed to the Labor-Management Fund is $91.47. Because there is no dispute of fact regarding how much interest is owed, the Court will enter judgment in favor of the Plaintiff Funds for a total $8,023.24 for interest owed on the unpaid contributions.[9]

The Court will also award liquidated damages and audit fees and costs. Pursuant to the Short Form Agreement, liquidated damages are assessed at 20%. Liquidated damages are thus assessed as $29,923.32.[10] The audit costs are $6,570.00 and court costs are $400. *See* Pls.' App. 136; *id.* at 157, ¶ 5. Because there is no dispute regarding the amount of liquidated damages, the audit costs, and the court costs, the Court will enter judgment in favor of the Plaintiff Funds for an additional amount of $36,893.32.

Finally, the Plaintiff Funds are also entitled to attorney's fees. The Plaintiff Funds are represented by Attorney Andrew Kelser. They have provided a detailed accounting of Attorney Kelser's hours and fees and request attorney's fees for $26,289.00. This amount was calculated using the lodestar approach in multiplying Attorney Kelser's hourly fee[11] of $276.00 by the number of hours worked, 95.25. Defendants request this amount be reduced because they contend

---

[9] This interest is assessed through April 30, 2020.

[10] This is liquidated damages on the unpaid contributions owed to the Benefit Funds only pursuant to the Short Form Agreement.

[11] Defendants concede Attorney Kelser's hourly rate is reasonable. *See* Resp. in Opp'n to Mot. for Summ. J. 18, ECF No. 29

Attorney Kelser wasted judicial resources throughout discovery with overbroad requests, decided to oppose Defendants' motion for a more definite statement, initiated a second lawsuit for unpaid contributions, and spent excessive hours on legal research.[12] Because the Court finds Attorney Kelser spent a reasonable time litigating this case, the Court will award the full requested amount of $26,289.00 in attorney's fees.

In a successful action for delinquent contributions, the award of attorney's fees is not discretionary. *See* 29 U.S.C. § 1132(g)(2), (D) ("[When] judgment in favor of the plan is awarded, the court shall award the plan . . . attorney's fees and costs . . . ."). To reach a reasonable attorney's fee award, courts employ the lodestar calculation. *See United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007). Courts should determine the reasonable numbers of hours expended on the litigation and multiply it by a reasonable hourly rate. *See id.* The result reached is presumptively reasonable but is still subject to adjustments. *See id.* (internal citations omitted).

To determine whether fees are reasonable, the requesting party must provide specific and "fairly definite information as to hours devoted to various general activities." *Id.* (internal quotation marks and citations omitted). Specificity is only required to the extent it allows the court to determine whether the hours spent were reasonable for the work performed. *See Washington v. Phila. Cnty. Ct. Com. Pl.*, 89 F.3d 1031, 1037 (3d Cir.1996). Attorney Kelser certifies that he spent 95.25 hours on the case. *See* Pls.' App. 156. He provides specific line items of his completed tasks including drafting pleadings and motions, attending hearings and settlement conferences, legal

---

[12] Defendants alternatively argue that an award of attorney's fees is not ripe for disposition because summary judgment should be granted on the unpaid contributions. Because the Court will grant summary judgment on the amounts owed for unpaid contributions, Defendants' argument will not be further addressed.

research and motions practice, and correspondence with the Court and Defendants' counsel. Upon review of Attorney Kelser's timesheet, the Court concludes he has provided sufficient specificity as to his fees and the hours he spent were reasonable. The Court will therefore award the Plaintiff Funds the full amount of their requested award—$26,289.00 in attorney's fees. *See Roofers Local 30 Combined Welfare Fund v. Bourque*, No. 06-3787, 2010 WL 2730595, at *2 (E.D. Pa. July 9, 2010) (finding 111 hours reasonable under the circumstances because review of timesheet did not reveal any entries that were inflated or unnecessary and granting full attorney's fee award).

Defendants challenge the amount of hours Attorney Kelser spent on this case. However, none of Defendants' arguments persuade the Court to reduce the attorney's fee award. First, Defendants argue Attorney Kelser made overbroad discovery requests and failed to produce the results of the payroll audit to allow Defendants to offer judgment pursuant to Federal Rule of Civil Procedure 68. They thus contend they were deprived of the opportunity to offer judgment and any hours billed after the completion of the payroll audit (32.5 hours) were unnecessarily billed including all time spent on this motion for summary judgment. The Court is unpersuaded.

Defendants were responsible for many of the delays in this case by failing to produce documents during discovery and prolonging the completion of the payroll audit. The Court held several telephone conferences to discuss Defendants' outstanding discovery obligations and extended the deadlines multiple times. Much of the time Attorney Kelser spent on the discovery issues is due to Defendants' own conduct. Although Defendants contend the discovery requests were overbroad and unnecessary, the Court notes Defendants did not raise these arguments to object to the requests for production but rather attributed the continued delay on discovery production to the ongoing coronavirus 2019 (COVID-19) pandemic and issues with electronic storage devices.

On the issue of Attorney Kelser's alleged withholding of the payroll audit,[13] Defendants were granted several extensions to produce documents necessary for the payroll audit. The Plaintiff Funds, however, did not receive additional time to move for summary judgment. As late as May 29, 2020, Defendants had still not produced several documents necessary to complete the payroll audit. And according to the record, the payroll audit was not completed until June 4, 2020. *See* Pls.' App. 143. The Plaintiff Funds filed their motion for summary judgment on June 12, 2020, as required in the case management order. Defendants' bare allegation that they would have made an offer of judgment had they received the payroll audit sooner is unlikely considering the eight-day window between receiving the completed payroll audit and the deadline to file motions for summary judgment.

Insofar as Defendants argue they were deprived of the opportunity to offer judgment pursuant to Rule 68, the Court again disagrees. This case required only that Defendants comply with a payroll audit to determine if they owed any unpaid contributions and to pay those unpaid contributions. As a result, the parties made several attempts to settle. Nonetheless, after several settlement conferences in April with United States Magistrate Judge Linda K. Caracappa, the parties reached no settlement. *See* Min. Entries for Settlement Confs., ECF Nos. 35–43. In the Court's last teleconference with the parties on May 29, 2020, the parties expressed no interest in settlement, largely because Defendants failed to produce documents necessary to complete the payroll audit. Therefore, Defendants' contention that they would have offered judgment dismissing the need for summary judgment is insufficient to reduce the attorney's fee award by Attorney

---

[13] Defendants offer no evidence to show Attorney Kelser intentionally withheld the completed payroll audit after the auditor completed it on June 4, 2020.

Kelser's time spent on this motion.[14] Because Attorney Kelser spent a reasonable time on discovery and this motion for summary judgment, and did not withhold the payroll audit for an extended period of time, the Court declines to reduce the Plaintiff Funds' attorney's fee award by 32.5 hours.

Defendants' next argument, that Attorney Kelser spent an unreasonable amount of time on wasteful or unsuccessful pursuits, is equally unpersuasive. Although Attorney Kelser was not successful in every aspect of this case, the Court will not reduce his hours spent opposing Defendants' motions. Defendants challenge Attorney Kelser's hours spent opposing their motion for a more definite statement and motion for consolidation because he was unsuccessful. The Supreme Court has stated "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Further, a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* (internal citation omitted).

After filing the Complaint in this case, which originally sought only to compel a payroll audit and unpaid contributions revealed by the payroll audit, Defendants moved for a more definite statement. The Plaintiff Funds then filed a second action against Defendants seeking unpaid contributions as of September 2019. Defendants moved to consolidate the two cases. The Plaintiff Funds opposed both motions. Although the Court granted Defendants' motion to consolidate and

---

[14] The Court also notes Defendants argue they were deprived of the opportunity to offer judgment as to "All Other Funds" only. *See* Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J. 18. As a result, according to Defendants, they would not have offered judgment as to the unpaid contributions owed to the Health Benefit Plan. The Plaintiff Funds therefore would have been required to move for summary judgment on the contributions owed to the Health Benefit Plan regardless of when Defendants received the payroll audit. Also, despite Defendants' request to reduce Attorney Kelser's hours by 32.5 hours, Attorney Kelser only spent 24 hours drafting the motion for summary judgment, *see* Pls.' App. 162, which the Court finds reasonable.

directed the Plaintiff Funds to file an amended complaint asserting all claims in this case, the Plaintiff Funds lack of success does not warrant reducing the attorney's fee award by the time spent on these two motions.

Although Defendants contend Attorney Kelser's initiation of the second case was "pretext" to bill more hours, the Court disagrees. Defendants argue Attorney Kelser should have merely filed an amended complaint in response to their motion for a more definite statement and his decision to initiate a second case unnecessarily expended wasteful hours (11.5 hours). However, the complaint in the second case asserted new claims and did not "cure the [alleged] deficiencies" in the first complaint Defendants moved to dismiss. *See* Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J. 18. As for the motion for consolidation, there is no rule, and Defendants cite to none, that requires the Plaintiff Funds to bring all of their claims under the collective bargaining agreements (even those that enforce different obligations and accrued at a later time) in one case. The Plaintiff Funds' decision to pursue their claims in two separate cases and to oppose Defendants' motion for consolidation does not warrant reducing the hours spent doing so. Regardless of the Plaintiff Funds' position on the more definite statement and consolidation, they achieved "excellent results" on all claims and the Court declines to reduce the fees incurred in opposing Defendants' motions early on in this case. *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, No. 03-3924, 2008 WL 2600364, at *7 (E.D. Pa. June 26, 2008), *aff'd*, 579 F.3d 220 (3d Cir. 2009) ("[T]he Court finds that the Prevailing Plaintiffs achieved 'excellent results' and therefore declines to strike the fees incurred pursuing ultimately unsuccessful claims for relief.").

Defendants also ask the Court to reduce Attorney Kelser's hours by 6.3 hours for time he spent researching ownership and managing member authority on March 9, 2020. According to Attorney Kelser's timesheet, on March 9, 2020, he spent 7 hours completing the following tasks:

"[l]egal research regarding ownership, managing member authority; Prepare for Rule 16 and Rule 26(f) Conference with Judge Sánchez, Defendants' counsel; Telephone conference with Defendants' Counsel regarding preliminary audit findings, potential settlement." *See* Pls.' App. 160. Defendants contend the conference with the Court and the conference regarding settlement only amounted to .7 hours. As a result, Defendants ask the Court to reduce the hours for this entry because they assert Attorney Kelser should not have spent 6.3 hours conducting legal research in light of his experience and expertise.[15] *See* Defs.' Resp. 19. The Court disagrees.

First, this line item states Attorney Kelser spent time, in addition to merely attending the conferences, preparing for both conferences and conducting legal research. The Court finds it reasonable for Attorney Kelser to have spent time preparing for the Rule 16 conference as it is expected parties are prepared for their court appearances. Although the Court cannot determine how long Attorney Kelser spent preparing for these two conferences, which likely included reviewing the preliminary payroll audit to discuss settlement, the parties' joint Rule 26(f) report, and the needs of the case, it is reasonable for Attorney Kelser to have spent *some* time doing so. As a result, to address Defendants' objection, the Court must determine whether Attorney Kelser spent a reasonable amount of time, 6.3 hours, on preparation *and* legal research.

The Court finds the 6.3 hours Attorney Kelser spent on both reasonable. Although Attorney Kelser has several years' experience in labor and employment benefits law, he can reasonably spend time researching ownership and managing member authority considering the Plaintiff Funds brought a breach of fiduciary duty claim against Mecha. For that claim, the Plaintiff Funds were

---

[15] The Court notes Defendants' objection suggests Attorney Kelser should not have spent *any* time on legal research regarding managing member authority. Defendants do not offer a reduced amount of time that is reasonable to conduct this research. The Court is nonetheless unpersuaded it was unreasonable for Attorney Kelser to spend any time on legal research regardless of his experience.

required to establish Mecha exercised authority and control over the management and disposition of plan assets. *See* 29 U.S.C. § 1002(21). The relevant inquiry on this issue is "whether an individual exercised authority or control over the plan assets, not whether the individual otherwise had the authority to make business decisions or was acting in the scope of his or her employment when exercising such authority or control." *Local Union No. 98 Int'l Bhd. of Elec. Workers v. LP Herman Co.*, No. 15-815, 2015 WL 4273375, at \*9 (E.D. Pa. July 14, 2015). Because Rae Lifts is a limited liability company organized under Illinois law, Attorney Kelser reasonably spent time researching the structure of the business entity and the authority of managing members to determine Mecha's fiduciary status. To the extent Defendants contend Attorney Kelser's experience in labor and employment benefits law deprives him of the ability to spend a reasonable amount of time researching the structure of business entities in any case, the Court is unpersuaded.

Moreover, Defendants have not provided an adequate justification to find 6.3 hours an unreasonable amount of time to spend on preparation and legal research. *See United Auto. Workers Local 259 Soc. Sec. Dep't*, 501 F.3d at 291 ("[W]e emphasize that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive." (internal quotation marks and citation omitted) (alteration in original)). This is not a case where it is clear the attorney spent time on an inefficient and fruitless search. *See Baughman v. U.S. Liability Ins. Co.*, 723 F. Supp. 2d 741, 751 (D.N.J. 2010) (reducing attorney time spent on legal research because the attorney was "led down some blind allies" and more efficient research was expected). In fact, Attorney Kelser's time proved well spent as reflected by his ability to secure Defendants' stipulation that Mecha is a fiduciary and his thoughtful and persuasive arguments in his briefs and the many teleconferences with the Court throughout discovery. *See* Stip. ¶¶ 6–8. Therefore, because the Court has no reason to find 6.3 hours unreasonable to prepare for two conferences and conduct

legal research on managing member authority, the Court will not reduce the attorney's fee award. *See United Auto. Workers Local 259 Soc. Sec. Dep't*, 501 F.3d at 291 (affirming district court's attorney's fee award because the defendant did not provide "adequate justifications to reduce the hours of the Fund's fees").

In sum, there is no dispute of material fact as to Defendants' liability to the Plaintiff Funds for unpaid contributions totaling $151,479.31. The Court will thus grant the Plaintiff Funds' motion for summary judgment on this issue and enter judgment in their favor on Counts I, II, III, and IV. The judgment will include the amount for unpaid contributions, $8,023.24 in interest, $29,923.32 in liquidated damages, $6,570.00 for audit costs, $400 for court costs, and $26,289.00 in attorney's fees.

II.   The Benefit Funds' Breach of Fiduciary Duty Claim Against Mecha

The Court will grant the Benefit Funds' motion for summary judgment on their breach of fiduciary duty claim against Mecha because he is an ERISA fiduciary and failed to turn over plan assets by paying the required contributions to the Plaintiff Funds. Pursuant to 29 U.S.C. § 1109, personal liability is imposed upon "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" in relation to the plan. One way in which a person is an ERISA fiduciary is if he exercises any discretionary authority or discretionary control respecting management of the plan or exercises any authority or control respecting management or disposition of plan assets. *See* 29 U.S.C. § 1002(21)(A). Plan assets include unpaid contributions that are due and owing. *See Trs. of Nat. Elevator Industry Pension Fund v. The Elevator Guild, LLC*, No. 11-2870, 2013 WL 271888, at *3 (E.D. Pa. Jan. 23, 2013) ([T]itle to the unpaid contributions owed to the Funds were vested assets of the Funds

from the time they were due and owing, pursuant to the terms of the CBA and the trust documents, and therefore were plan assets under ERISA.").

On June 4, 2020, the parties stipulated that Mecha is a fiduciary pursuant to ERISA. *See id.* ¶¶ 6–8; 20 U.S.C. § 1002(21). Defendants also concede Mecha is jointly and severally liable to the Benefit Funds for any and all unpaid contributions. *See* Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J. 21. As a result, there is no dispute of material fact that Mecha is an ERISA fiduciary and he breached his fiduciary duty by repeatedly failing to timely remit contributions to the Benefit Funds on behalf of the beneficiaries employed by Rae Lifts. *See Trs. of Nat. Elevator Indus. Pension Fund*, 2013 WL 271888, at *3 (holding individual officer jointly and severally liable with employer for failure to remit timely contribution payments as required by plan documents). The Court will therefore enter judgment in the Benefit Funds' favor on Count VI and hold Mecha jointly and severally liable for the amounts owed to the Benefit Funds—$220,730.67.[16]

III.   The Plaintiff Funds' Motion for Summary Judgment for Injunctive Relief

The Court will deny the Plaintiff Funds' motion on Count V in which they seek a permanent injunction requiring Defendants to timely submit contribution reports and payments. Pursuant to 29 U.S.C. § 1132(g)(2)(E), in an action for delinquent contributions, benefit plans may seek "equitable relief as the court deems appropriate." In this case, the Plaintiff Funds seek a permanent injunction requiring Defendants to report and pay contributions in a timely manner consistent with the collective bargaining agreement. *See* Pls.' Mot. for Summ. J. 10. After a party has succeeded on the merits, a court may grant a permanent injunction if the party also establishes (1) it will suffer irreparable harm, (2) no remedy available at law could adequately remedy that harm, (3) the

---

[16] This amount includes all unpaid contributions owed to the Benefit Funds only, interest, liquidated damages, attorney's fees, and audit and court costs.

balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest. *See TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019). "[T]he inability to show irreparable harm—or, relatedly, that a legal remedy would be inadequate—defeats a request for injunctive relief." *Id.* (internal citation omitted). The Plaintiff Funds have not met their burden here.

The Plaintiff Funds' failure to establish irreparable harm is fatal to their claim for a permanent injunction. Defendants' failure to pay contributions does not rise to the level of irreparable harm. *See Hadel v. Willis Roof Consulting, Inc.*, No. 06-1032, 2008 WL 4372783, at *2 (D. Nev. Sept. 23, 2008) ("But an employer's delinquency under such circumstances does not compel the conclusion that the plan or its beneficiaries are thereby threatened with irreparable harm."). Although the Plaintiff Funds contend Defendants' continued disregard of its obligations "raises serious questions" as to their ability to collect from Defendants, speculation regarding what harm may occur in the future is not sufficient to warrant a permanent injunction. *See Bricklayers & Trowel Trades Int'l Pension Fund v. Kel-Tech Constr., Inc.*, 319 F. Supp. 3d 330, 346 (D.D.C. 2018) (denying permanent injunction because "the plaintiff must show something more [for irreparable harm]—for example, that 'the potential harm would threaten the [plaintiff's] very existence'" (internal citation omitted)). The Plaintiff Funds have not shown that they face irreparable harm such as financial distress in which the continued failure of Defendants to pay contributions threatens their fiscal legitimacy. *See id.* (noting permanent injunctions are not meant to remedy economic loss unless funds are in a "precarious financial condition" or "the actuarial soundness of the fund" was compromised). As a result, because the Plaintiff Funds only face economic loss, they have failed to establish irreparable harm to warrant a permanent injunction.

Relatedly, the Plaintiff Funds have an adequate remedy at law for any potential future harm. As was done here, the Plaintiff Funds can recover unpaid contributions with a monetary

damages award should Defendants continue to fail to make the necessary payments. To the extent Defendants were unaware of their obligations under the Short Form Agreement, the Court's finding that Defendants are bound to the Short Form Agreement, are required to submit reports and contributions monthly, and are bound by the 160-hour and 165-hour requirements on behalf of Mecha, sufficiently guides Defendants to continue to submit timely payments as obligated or face liquidated damages, interest, costs, and attorney's fees. *See Cent. Pa. Teamsters Pension Fund v. W & L Sales, Inc.*, 778 F. Supp. 820, 832 (E.D. Pa. 1991) ("Having resolved the legal question of the defendant's obligation to make payments, we fully expect said defendant will make all future payments [as required.]"); *Trs. of Wa. Area Carpenters' Pension & Retirement Fund*, 743 F. Supp. 422, 428 (D. Md. 1990) (denying claim for permanent injunction because court's finding that employer was bound to collective bargaining agreement "concretely establishe[d] that defendants must continue to submit timely contributions"). In any event, "courts should be alert to the possibility that a monetary judgment might serve to alter the defendant's conduct as effectively as a permanent injunction would . . . ." *Bricklayers & Trowel Trades Int'l Pension Fund*, 319 F. Supp. 3d at 346. Because any harm the Plaintiff Funds face due to Defendants' continued failure to make timely contributions can be remedied with a monetary damages award, the Plaintiff Funds have an adequate remedy at law.[17]

Without showing irreparable harm or an inadequate remedy at law, the Plaintiff Funds are not entitled to a permanent injunction requiring Defendants to comply with their obligations under

---

[17] In the event Defendants continue to ignore their obligations and the Plaintiff Funds face economic loss that amounts to irreparable harm as discussed, the Plaintiff Funds may seek to reopen this matter and request injunctive relief as necessary. *See Cent. Pa. Teamsters Pension Fund v. W & L Sales, Inc.*, 778 F. Supp. 820, 832 (E.D. Pa. 1991) (denying permanent injunction but informing plaintiffs they "may immediately seek to reopen th[e] matter and [the court would] grant such immediate relief as may be necessary" if the defendants fail to make future payments as required).

the Short Form Agreement. The Court will thus deny the Plaintiff Funds' motion for summary judgment on Count V.

IV.   <u>Defendants' Motion for Partial Summary Judgment</u>

For the same reasons the Court will deny the Plaintiff Funds' motion for summary judgment on Count V, the Court will grant Defendants' motion for partial summary judgment on that Count.

V.   <u>Defendants' Motion for Leave to File an Amended Answer</u>

Because Defendants' newly proposed defenses and counterclaim are futile, the Court will deny Defendants' motion for leave to file an amended answer. Federal Rule of Civil Procedure 15(a) permits amendment of pleadings with leave of the Court, and directs courts to "freely give leave when justice so requires." The Third Circuit instructs courts to consider the factors established in *Foman v. Davis*, 371 U.S. 178 (1962) in determining whether to grant leave to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Pursuant to *Foman*, courts can deny leave to amend for undue or unexplained delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing parties; and futility. *See Long v.Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). "Futility" means that the pleading, as amended, would fail to state a claim or defense upon which relief could be granted. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *see also Miller v. Beneficial Mgmt. Corp.*, 844 F. Supp. 990, 1001 (D.N.J. 1993) (stating futility of answers or defenses is determined by motion to dismiss standard). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Defendants' new defenses and counterclaim are futile because they are all premised on the written waiver which is unenforceable against the Plaintiff Funds. Specifically, the Court held the written waiver is unenforceable against the Plaintiff Funds and rejected Defendants' defenses of fraud-in-the-inducement, fraud-in-the-execution, unilateral or mutual mistake, recoupment and setoff of damages, and integration of the written waiver as discussed above. *See Cement Masons' Union Local No. 592 Pension Fund v. PermaFloor, LLC*, No. 17-597, 2018 WL 347514, at *4 (E.D. Pa. Jan. 10, 2018) (granting motion to dismiss employer's counterclaim for fraud-in-the-execution because "such a defense is not permitted under section 515."). The Court also addressed the counterclaim for reformation which fared no better against the Plaintiff Funds. Allowing Defendants to amend their answer to include these defenses and counterclaim would thus be futile. *Cf. Emp. Painters' Tr. v. Pac. Nw. Contractors, Inc.*, No. 13-05018, 2013 WL 1774628, at *6 (W.D. Wash. Apr. 25, 2013) (concluding employer's affirmative defenses failed as matter of law because they fell outside of limited defenses available against benefit funds). The Court will therefore deny the motion for the reasons stated in granting the Plaintiff Funds' motion for summary judgment.

**CONCLUSION**

There is no dispute of material fact as to the amount Defendants owe to the Plaintiff Funds in unpaid contributions as a result of the payroll audit and contribution reports from April 1, 2018 though April 30, 2020. The Court will therefore grant the Plaintiff Funds' motion for summary judgment on Counts I, II, III, and IV in which they seek a damages award for these unpaid contributions, interest, liquidated damages, costs, and attorney's fees. The Court will enter judgment in favor of the Plaintiff Funds in the amount of $222,619.58. On Count VI, the Court will enter judgment against Mecha, who has stipulated he is an ERISA fiduciary, and will be held

jointly and severally liable for $220,730.67—the amount owed to the Benefit Funds. On the Plaintiff Funds' claim for a permanent injunction in Count V, the Court will deny the Plaintiff Funds' motion for summary judgment and grant Defendants' motion for partial summary judgment because the Plaintiff Funds have failed to establish irreparable harm or an inadequate remedy at law. Finally, the Court will also deny Defendants' motion for leave to file an amended answer because the proposed defenses and counterclaim fail as a matter of law.

An appropriate order follows.

BY THE COURT:


  /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.